# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-103-HAB |
| | ) | |
| AMARIEA ROGERS | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's First Motion to Suppress Based on Illegal Search of His Cellphone (ECF No. 28) filed on October 28, 2019. Defendant, a parolee at the time of the subject search, alleges that the warrantless search of his cell phone violated his Fourth Amendment rights. The Government filed its Response in Opposition (ECF No. 30) on November 12, 2019, and Defendant filed his Reply (ECF No. 32) on November 29, 2019. This matter is now ripe for determination.

**I.    Factual Background**

On December 19, 2016, Defendant was placed on parole following his release from the Indiana Department of Corrections. Defendant signed a "Conditional Release Parole Agreement" which set out Defendant's conditions of parole. At issue in this case is Condition 9, which states:

> I understand that I am legally in the custody of the Department of Correction, and that my person and residence or property under my control may be subject to reasonable search by my supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition of remaining on parole.

On February 18, 2018, Defendant was charged in Allen Superior Court with Resisting Law Enforcement, a Level 6 felony, two counts of Resisting Law Enforcement, a Class A misdemeanor, and Operating a Motor Vehicle without Receiving a License, a Class C misdemeanor. Upon learning of the charges, Defendant's parole officer, Chandelyn King, contacted the Allen County

Jail to set up a meeting with Defendant. King was surprised to learn that Defendant had been bonded out of jail, as Defendant had no job and no obvious means of legitimate income. King then met with Defendant in person to discuss the new charges.

During the meeting, Defendant was administered a "for cause" urine drug screen that was positive for Oxycodone. Defendant was unable to produce a valid prescription at the time of the meeting but advised King that he could produce one if given the chance. Based on the new state charges, the positive drug test, and the posting of bond without any known legitimate income, Defendant's cell phone was seized and searched. The search revealed text messages, videos, and photographs of suspected drug sales and the possession of firearms. As a result, Defendant was charged in this Court with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

## II.  Legal Analysis

This case tasks the Court with balancing two competing interests. On the Government's side is the interest in monitoring parolees, individuals who are, by definition, still in the criminal justice system. On Defendant's side is the substantial privacy interest one has in the contents of his cell phone, an item that can hold information about every aspect of the owner's life. While the Court believes that the question is a close one, it nonetheless must side with the unanimous views of those circuits that have addressed the issue and deny Defendant's motion.

The Government relies principally on two cases: *United States v. Knights*, 534 U.S. 112 (2001), and *Samson v. California*, 547 U.S. 843 (2006). In *Knights*, the defendant, a probationer, challenged the warrantless search of his apartment. The Supreme Court began its analysis by noting that, under the totality of the circumstances test, "the reasonableness of a search is determined 'assessing, on the one hand, the degree to which it intrudes upon an individual's

2

privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Finding that the defendant's status as a probationer "informs both sides of the balance," the Supreme Court found that probationers' higher recidivism rates, their incentives to conceal criminal activity, and their decreased expectation of privacy led to the conclusion that officers needed "no more than reasonable suspicion to conduct a search of this probationer's house." *Knights*, 534 U.S. at 119-21. "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id*. at 121.

*Samson* extended the holding of *Knights* to parolees. In *Samson*, the named defendant was approached on the street by an officer who, relying solely on defendant's status as a parolee, searched defendant's person. Again, using the totality of the circumstances, the Supreme Court found that a defendant's status as a parolee, coupled with the "plain terms of [a] parole search condition," lead to the conclusion that the defendant "did not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 852. On the other hand, the Court found the Government's interest to be "substantial," again noting the increased recidivism rates and incentive to conceal found in parolees. *Id.* at 853-55. After weighing the competing interests, the Court concluded that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id*. at 857.

Defendant recognizes the Government's case law but urges the Court to rely instead on the later-decided cases of *Riley v. California*, 573 U.S. 373 (2014), and *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *Riley*, in particular, supports Defendant's position. Finding that the

3

warrantless search of a cell phone is not authorized as a search incident to arrest, the Supreme Court focused on quality and quantity of information found on modern cell phones. On the quantity side, the Court stated,

> [t]he storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Riley*, 573 U.S. at 394.

From a qualitative standpoint, the Court noted that information like internet browsing history and the apps on a phone can "form a revealing montage of the user's life." *Id*. at 396. Further complicating matters is the fact that much of the information on a cell phone is maintained on a server far from the phone itself. The Court found that a search of this "cloud computing" information would be akin to "finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house." *Id*. at 397. After weighing the heavy privacy concerns of the public against the rights of law enforcement to conduct a search incident to arrest, the Court concluded that "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id*. at 401.

Defendant argues that his authorities should carry more weight in the Court's analysis than *Knights* and *Samson* because the Government's cases "were prior to the technological revolution that the advent of cell phone and the mass collection of data that the Supreme Court recognized in the *Riley* and *Carpenter* decisions." (ECF No. 32 at 5). This argument is not without appeal. As

4

the Seventh Circuit has noted, both *Riley* and *Carpenter* support the argument that "the Supreme Court has recently granted heightened protection to cell phone data." *United States v. Wanjiku*, 919 F.3d 472, 484 (7th Cir. 2019). It is certainly possible to read *Riley*, a case also decided in the context of an individual who was subject to a lesser expectation of privacy and come away with the conclusion that a warrant may be necessary for the search of a cell phone in all but those cases in which exigent circumstances exist. *Riley*, 573 U.S. at 402-04.

However, the Court's own research has found that every circuit court faced with the same question has sided with the Government and found that a warrant is not necessary to search the cell phone of a parolee. The Eighth, *United States v. Jackson*, 866 F.3d 982 (8th Cir. 2017), Ninth, *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017), and Tenth Circuits, *United States v. Pacheco*, 884 F.3d 1031 (10th Cir. 2018), have all concluded that the totality of the circumstances, which include the existence of a parole search condition, render the warrantless search of a parolee's cell phone reasonable under the Fourth Amendment.

*Johnson* presents a representative discussion. The Ninth Circuit recognized the importance of *Riley* and its "emphasis on the almost *sui generis* nature of cell phones." *Johnson*, 875 F.3d at 1274. However, the court went on to note the Government's "substantial" interests, which included "combating recidivism, promoting reintegration, and effectively detecting parole violations." *Id*. Weighing the interests against one another, the court held "that warrantless searches of Johnson's cell phone where constitutionally reasonable, given Johnson's status as a parolee." *Id*. at 1275.

Defendant correctly notes that his case is different from the Government's authorities, and by extension the circuit decisions cited in this Opinion and Order, in that Indiana does not permit suspicionless searches of parolees. Defendant's Condition 9 is consistent with Ind. Code § 11-13-3-7(a)(6), which requires "reasonable cause to believe that the parolee is violating or is in imminent

5

danger of violating a condition to remaining on parole" before a warrantless search can be conducted. However, the purpose of the reasonableness language is to assure that the search is "related to the parolee's conviction or rehabilitation" as opposed to a search conducted only to intimidate or harass. *Carswell v. State*, 721 N.E.2d 1255, 1262 (Ind. Ct. App. 1999). There is no indication that the requirement of reasonable cause was intended to place a significant burden on law enforcement in conducting searches of parolees or limit the places or items open to search.

In any event, the Court finds that reasonable cause existed here. As the Government points out, King was aware of two express violations of Defendant's parole conditions, that he refrain from using controlled substances and that he not engage in conduct prohibited by state law, at the time the search was conducted. She additionally suspected that he was engaged in illegal activity as evidenced by her belief that he had bonded himself out of jail without a legitimate source of income. While Defendant contests the factual bases for King's determination that he had violated his parole conditions, King was not required to have enough evidence to constitute probable cause that a crime had been committed. *Knights*, 534 U.S. at 121. The Court finds that, on the basis of the information available to King, she could reasonably conclude that Defendant had violated his parole conditions, and therefore the search was reasonable.

## III. Conclusion

For the foregoing reasons, Defendant's First Motion to Suppress Based on Illegal Search of His Cellphone (ECF No. 28) is DENIED.

SO ORDERED on December 4, 2019.

                                              s/ Holly A. Brady
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT